UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ANDRE PATTERSON,

                              Plaintiff,                    **OPINION & ORDER**

    - against -                                                  No. 20-CV-9317 (CS)

FRANCISCO J. COLON,

                              Defendant.
---------------------------------------------------------------x

Appearances:

Andre Patterson
Bronx, New York
*Pro Se Plaintiff*

Neil Shevlin
Assistant Attorney General
Office of the Attorney General of the State of New York
New York, New York
*Counsel for Defendant*

Seibel, J.

      Before the Court is the motion to dismiss of Defendant Francisco J. Colon. (ECF No. 18.) For the following reasons, the motion is GRANTED.

**I.    BACKGROUND**

      I accept as true the facts, but not the conclusions, set forth in Plaintiff's Amended Complaint, (ECF No. 15 ("AC")), Initial Complaint, (ECF No. 2 ("IC")), and submissions in opposition, (ECF No. 22 ("P's Decl."); ECF No. 23 ("P's Mem.")). *See Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (court may give *pro se* plaintiff the benefit of considering facts in original complaint even if they have not been repeated in amended complaint); *Braxton v. Nichols*, No. 08-CV-

8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a pro se plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss.").[1]

### A. Factual Background

At all relevant times, Plaintiff was a state prison inmate at the Otisville Correctional Facility, and Defendant was a correctional officer there. (AC ¶¶ 1-2.) On July 6, 2020, Defendant assigned Plaintiff to tear down the plywood ceiling of the pavilion in the recreational area of the prison yard, (IC at 4; *see* AC ¶ 4), and "remove bird feces, carcass, a great amount of dust and other asbestos related materials," (AC ¶ 5), that had accumulated there over the years, (P's Mem. at 2).[2] Defendant did "not have the slightest knowledge in removal of such health hazardous material," (AC ¶ 5), and Plaintiff was "not trained in appropriate safety precautions in the removal of hazardous material," (*id.* ¶ 6). Plaintiff protested the assignment, but Defendant threatened him with a misbehavior report if he did not comply with the order. (*Id.* ¶ 7.) Plaintiff objected that such a report could jeopardize his upcoming parole hearing, (*id.* ¶ 8), but Defendant yelled at Plaintiff to proceed, (*id.* ¶ 9).

Defendant gave Plaintiff a broom, dust pan and garbage bags. (*Id.* ¶ 10.) Plaintiff asked what kind of protective gear he should wear, and Defendant responded, "I don't know but we'll find something." (*Id.* ¶ 11.) Defendant gave Plaintiff a jumpsuit and dust mask. (*Id.* ¶ 12.) Taking down the ceiling caused an "avalanche," (P's Decl. ¶ 4), of dust, bird feces, feathers and other hazardous materials to fall on Plaintiff's face, shoulders and clothing, (AC ¶ 13; P's Mem.

---

[1] The Court will send Plaintiff copies of all unpublished decisions cited in this Opinion and Order.

[2] The IC refers to "dead carcasses, dried feces and urine," (IC at 4), but not "asbestos related materials."

2

at 8). Plaintiff inhaled this material, (P's Mem. at 3), causing him to cough uncontrollably and painfully, and causing his eyes to burn and water, (AC ¶ 14). Defendant, who was "some distance away," joked, "I guess sweeping ain't the best way to do the job." (*Id.* ¶ 15.) Plaintiff alleges that he continues to experience pain when coughing, as well as shortness of breath, fatigue, irregular heart rhythm, eye watering, severe headaches and vision impairment. (*Id.* at 3; P's Decl. ¶ 2.) He further alleges that Defendant "was keenly aware" that "such hazardous conditions . . . posed an unreasonable risk of serious damages to [P]laintiff's present and future health." (AC ¶ 16; *see* P's Mem. at 2.)

### B. Procedural History

On November 5, 2020, Plaintiff filed a complaint in this court, which the Court interprets as alleging that Defendant treated him with deliberate indifference to a safety and health risk, amounting to cruel and unusual punishment in violation of the Eighth Amendment.

By letter dated May 13, 2021, Defendant sought a pre-motion conference in connection with his anticipated motion to dismiss. (ECF No. 12.) Plaintiff responded as directed, (ECF No. 14), and on June 11, 2021, at the pre-motion conference, I granted Plaintiff leave to amend the Complaint, (*see* Minute Entry dated June 11, 2021). Plaintiff filed the Amended Complaint on June 25, 2021. The instant motion followed.

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).

B.   *Pro Se* **Plaintiffs**

Submissions by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curium*) (cleaned up).  Nevertheless, "threadbare recitals of the elements of a cause of action,

4

supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up).

### III.  DISCUSSION

#### A.  Eighth Amendment Claim

The Second Circuit holds that

> [t]o state an Eighth Amendment claim against a prison official based on conditions of confinement, an inmate must allege:  that (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety.

*McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020) (cleaned up); *see Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

"When a prisoner asserts a claim predicated on an unsafe condition, the court must determine 'whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.'" *McCray*, 963 F.3d at 120 (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)) (emphasis in original).  "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.* (cleaned up).  The objective element depends on both the "seriousness of the potential harm" and "the likelihood that such injury to health will actually be caused." *Helling*, 509 U.S. at 36.

The subjective prong requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020).  This requires "more than mere negligence"; instead, "the prison official must know of,

5

and disregard, an excessive risk to inmate health and safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (cleaned up).

### 1. Objective Prong

In *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987), the Second Circuit held that a *pro se* prisoner stated a claim by alleging that a prison official ordered him to continue working on a ladder he had told the official was unsafe. The court held that such an order "'involve[s] more than ordinary lack of due care for the prisoner's interests or safety.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). After *Gill*, courts in this circuit have found that significant injuries caused by hazardous prison workplace conditions can satisfy the objective element of an Eighth Amendment inquiry. *See, e.g.*, *Kenyon v. Weber*, No. 16-CV-6510, 2017 WL 1078620, at *4 (W.D.N.Y. Mar. 20, 2017); *Walker v. Vargas*, No. 11-CV-9034, 2013 WL 4792765, at *7 (S.D.N.Y. Aug. 26, 2013); *Baumann v. Walsh*, 36 F. Supp. 2d 508, 513-14 (N.D.N.Y. 1999).

Plaintiff describes an assignment that sounds unpleasant – perhaps even gross – but it is not at all clear that the material that Plaintiff was assigned to remove posed an unreasonable danger. The cleaning of detritus that has accumulated in an attic – even the remains of birds or rodents – is a chore many people perform. Plaintiff alleges that the material in the pavilion ceiling included "asbestos related material," (AC ¶ 5), but he does not say what it was, or whether it was hazardous, or what made it so. One may infer that it was not asbestos itself, but even if it were, that would not be sufficient to show a condition meeting the objective prong, because asbestos is not hazardous unless it is friable, *Pack v. Artuz*, 348 F. Supp. 2d 63, 79 n.13 (S.D.N.Y. 2004); *see LaBounty v. Coughlin*, 137 F.3d 68, 72-73 (2d Cir.1998) (inmate can state

6

claim for exposure to friable asbestos exposed to air),[3] and Plaintiff has not stated that the material here – whatever it was – was friable.

Assuming the material at issue was friable will not save Plaintiff's claim. While exposure to an "unreasonably high concentration" of airborne asbestos can state an Eighth Amendment claim, *see Reid v. City of N.Y.*, No. 20-CV-644, 2021 WL 4177756, at *4 (S.D.N.Y. Sept. 14, 2021); *Pack*, 348 F. Supp. 2d at 79, courts in this Circuit have recognized that a significant level of exposure is required for relief, *Moton v. City of N.Y.*, No. 15-CV-6485, 2016 WL 3554993, at *2 (S.D.N.Y. June 24, 2016). The concentration of asbestos must be unreasonably high, *Reid*, 2021 WL 4177756, at *4; *Johnakin v. NYC Dep't of Corr.*, No. 11-CV-4807, 2013 WL 5519998, at *17 (E.D.N.Y. Sept. 30, 2013), meaning "'the intensity and duration of the exposure must both be significant,'" *McDaniel v. City of N.Y.*, No. 20-CV-8348, 2021 WL 797655, at *4 (S.D.N.Y. Feb. 26, 2021) (cleaned up), *appeal dismissed*, No. 21-607 (2d Cir. June 2, 2021); *Walker v. LaValley*, No. 2-CV-807, 2014 WL 4744735, at *18 (N.D.N.Y. Sept. 23, 2014) (cleaned up).

Plaintiff's allegations fall short of these standards. He provides no facts plausibly suggesting any concentration of asbestos, let alone an unreasonably high one. The "asbestos-related materials" – whatever they were – were mixed with other attic-type detritus, and while his exposure to the detritus may have been intense, in that the dust and debris fell on him, the proportion of asbestos is unknown, and in any event the exposure could not have been of

---

[3] "Friable" describes "a state of decay in which asbestos fibers or dust are released from [asbestos containing materials] when disturbed. Friable asbestos poses a health risk because airborne fibers can become lodged in the lungs and respiratory tract, and over time may lead to asbestosis, mesothelioma and lung cancer." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 606 (2d Cir. 1996).

significant duration. *See Moton v. City of N.Y.*, No. 15-CV-6485, 2016 WL 1729046, at *3 (S.D.N.Y. Apr. 29, 2016) (inmate scraping "asbestos-filled dormitory ceilings" for no more than two days did not present an objectively serious harm), *report and recommendation adopted*, 2016 WL 3554993 (S.D.N.Y. June 24, 2016); *Simmons v. Gowanda Corr. Facility*, No. 13-CV-047, 2013 WL 3340646, at *2 (W.D.N.Y. July 1, 2013) (one-time potential exposure did not create unreasonable risk); *Bush v. Horn*, No. 07-CV-3231, 2010 WL 1712024, at *6 (S.D.N.Y. Mar. 2, 2010) ("[I]ncidental exposure . . . while unfortunate, can hardly be said to violate contemporary standards of decency."); *see also Solomon v. Nassau Cnty.*, 759 F. Supp. 2d 251, 258 (E.D.N.Y. 2011) ("[C]onditions that are temporary or occasional . . . without more have been found not to constitute 'a sufficiently serious deprivation' to sustain a Section 1983 deliberate indifference claim."). Cases that have found asbestos exposure to be sufficiently serious involved significantly greater exposure than is alleged here. *See Moton v. City of N.Y.*, No. 15-CV-6485, 2016 WL 7175287, at *3 (S.D.N.Y. Dec. 8, 2016) (eighty days living in a housing unit with peeling asbestos paint "all over" and working scraping detail in another unit sufficiently alleged objectively serious harm), *report and recommendation adopted*, 2017 WL 2779784 (S.D.N.Y. June 15, 2017); *Johnakin*, 2013 WL 5519998, at *18 (sixty days in a dormitory with friable asbestos met the objective prong).[4]

---

[4] I do not know why the Assistant Attorney General here relied on general Eighth Amendment cases, rather than the numerous cases involving inmates exposed to asbestos – many of them litigated by the New York State Attorney General's Office – that assist Defendant's cause.

Because Plaintiff has not plausibly alleged exposure to friable asbestos of unreasonably high concentration, he has not met the objective prong, and his Eighth Amendment claim must be dismissed.

### 2. Subjective Prong

Even if Plaintiff somehow satisfied the objective prong, he also fails to satisfy the subjective prong, as he presents no facts plausibly suggesting that Defendant knew that the "asbestos-related material" or other material was hazardous. His allegation that Defendant was "keenly aware" of the danger is wholly conclusory and, indeed, contradicted by his allegation that Defendant did not have "the slightest knowledge" about hazardous waste removal. Plaintiff argues that Defendant's knowledge of the danger may be inferred from his ordering Plaintiff to proceed despite Plaintiff's protests, but a correction officer ordering an inmate to complete a task that the inmate does not want to complete hardly shows that the officer was aware that the order would present a substantial risk of serious harm. Likewise, that Defendant obtained some gear for Plaintiff does not suggest such knowledge, as a jumpsuit and mask are appropriate for any dusty or dirty job. Finally, Defendant's amusement when the material fell on Plaintiff, while insensitive, does not suffice to show that Defendant understood that he had put Plaintiff in a hazardous position. At most Plaintiff shows that Defendant was negligent in not appreciating that the job might be hazardous, but "mere negligence will not suffice" to show deliberate indifference. *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996); *see Cotto v. Dee 1-5*, No. 18-CV-2130, 2018 WL 10140180, at *2 (S.D.N.Y. Apr. 17, 2018) ("The negligence of a correction official is not a basis for a claim of a federal constitutional deprivation under § 1983.").

Accordingly, Plaintiff's Eighth Amendment claim is dismissed.

### B. <u>Leave to Amend</u>

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended his complaint, (*see* ECF No. 15), after having the benefit of a pre-motion letter from Defendants outlining the proposed grounds for dismissal, (ECF No. 12), and the discussion at the June 11, 2021 pre-motion conference, (Minute Entry dated June 11, 2021). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (cleaned up); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading

10

defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Moreover, Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this opinion. Accordingly, the Court declines to grant leave to amend *sua sponte*. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED. The Clerk of Court is respectfully directed to send a copy of this Opinion and Order to Plaintiff, terminate the pending motion, (ECF No. 18), and close the case.

**SO ORDERED.**

Dated: February 24, 2022
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.